IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CYNTHIA DENICOLO,

           Plaintiff,

    v.

HUBBARD RADIO CHICAGO, LLC,

           Defendant.

No. 21-cv-6292
Judge Franklin U. Valderrama

MEMORANDUM OPINION AND ORDER

For nearly twenty years, Plaintiff Cynthia DeNicolo (DeNicolo), worked as an assistant producer on the "Eric in the Morning" radio show on WTMX 101.9-FM (The Mix), which Defendant Hubbard Radio Chicago (Hubbard) owns. DeNicolo was terminated in 2020 and subsequently filed suit against Eric Ferguson (Ferguson), formerly the show's host, asserting claims of intentional infliction of emotional distress and intentional interference with prospective business advantage based on Ferguson's alleged harassment while she worked at the Mix. Hubbard then published two statements in which Hubbard stated, among other things, that following an internal investigation, Hubbard found no evidence of illegal workplace conduct. DeNicolo then filed suit against Hubbard in the Circuit Court of Cook County asserting a claim for defamation *per se*. R. 1-4, SAC.[1] Hubbard in turn removed the case to federal court based on 28 U.S.C. §§ 1332, 1441 and 1446. R. 1, Removal Notice. Hubbard now moves to dismiss the second amended complaint (SAC) pursuant to

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Federal Rule of Civil Procedure 12(b)(6). R. 13, Mot. Dismiss. Hubbard also moves to strike certain allegations of and exhibits to the SAC. R. 15, Mot. Strike. For the reasons that follow, the Court grants Hubbard's motion to dismiss and terminates the motion to strike as moot.

## Background

In 2000, DeNicolo was hired at the Mix radio station. SAC ¶ 6(a).[2] From 2000 to 2020, Ferguson, the host of the morning drive-time show known as "Eric in the Morning" on The Mix, was DeNicolo's boss. *Id*. ¶¶ 5, 6(d). Starting in or about January 2004, Ferguson began touching DeNicolo inappropriately and coerced her into performing oral sex. *Id*. ¶¶ 6(f)–(j). The coerced sexual activity typically occurred after a company sponsored event or after the workday in DeNicolo's apartment. *Id*. ¶ 6(g). In 2020, DeNicolo was the victim of an involuntary termination program instituted by Hubbard in response to the COVID-19 pandemic. *Id*. ¶ 6(o).

In 2021, DeNicolo filed a verified complaint against Ferguson in the Circuit Court of Cook County asserting claims for intentional infliction of emotional distress and tortious interference with prospective business advantage (Verified Complaint). SAC ¶¶ 5–6. On or about September 27, 2021, Hubbard authorized its managers at the Mix to publish an inter-office email to Mix employees that stated:

> We recently received notice that a former employee has filed a lawsuit against Eric Ferguson. The suit alleges misconduct while employed at The Mix. As you know, we take concerns about our workplace culture and the experience of our employees very seriously, and we took steps immediately to investigate this complaint. With the full support of Hubbard Chicago and Hubbard

---

[2]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

> Broadcasting we initiated an internal investigation into the claims, and then retained an outside expert to conduct a second, independent investigation. Neither investigation found evidence to corroborate the allegations of illegal workplace conduct.

(Statement I). *Id.* ¶12.

Hubbard also directed its vice president and Chicago market manager, Jeff England, to give an interview to Robert Feder, a newspaper columnist who wrote in his September 27, 2021 online column:

> "Hubbard Radio learned of complaints from a former employee, Cynthia DeNicolo, related to the conduct of Eric Ferguson while they were coworkers at The Mix." Jeff England, vice president and market manager for Hubbard Chicago, said in a statement.

> "We take concerns about our workplace culture and the experience of our employees very seriously, and with the full support of Hubbard Radio Chicago and Hubbard Broadcasting we took steps immediately to investigate. An internal investigation and an independent external investigation found no evidence to corroborate allegations of illegal workplace conduct."

(Statement II; collectively with Statement I, the Statements). *Id.* ¶ 14 (citation omitted).

DeNicolo then filed a lawsuit in the Circuit Court of Cook County for defamation *per se* under Illinois common law. Hubbard, in turn removed that lawsuit to federal court on the basis of diversity of jurisdiction. R. 1, Removal Notice. Hubbard moves to dismiss the SAC pursuant to Rule 12(b)(6). Mot. Dismiss. Shortly after filing its motion to dismiss, Hubbard filed a motion to strike allegations of and exhibits to the SAC. Mot. Strike. The Court held oral argument on the motions on August 30, 2022. R. 37.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

"Good name in man and woman . . . [i]s the immediate jewel of their souls. Who steals my purse steals trash . . . [b]ut he that filches from me my good name [r]obs me of that which not enriches him, [a]nd makes me poor indeed." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 12 (1990) (quoting William Shakespeare, Othello, act III, sc. 3). In recognition of the concern Shakespeare so aptly described, "[s]ince the latter half of the 16th century, the common law has afforded a cause of action for damage

4

to a person's reputation by the publication of false and defamatory statements." *Id.* at 11 (citation omitted).

Illinois law[3] defines defamation as "the publication of a false statement that 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person.'" *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (quoting *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006)). To state a claim for defamation, a plaintiff must allege that "the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Publ. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). "Illinois recognizes two types of defamation: defamation *per se* and defamation *per quod*." *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009). "If a statement's 'defamatory character is obvious and apparent on its face,' it is considered defamation *per se*, with the law then presuming damages." *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831–32 (7th Cir. 2019) (quoting *Tuite*, 866 N.E.2d at 121). Defamation *per quod*, on the other hand, "requires a plaintiff to show that the false statement caused him harm." *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 612–13 (7th Cir. 2013). DeNicolo asserts a claim for defamation *per se*.

---

[3]Where federal jurisdiction is based on diversity of citizenship, courts apply the substantive law of the forum state. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018); *see also Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021).

Illinois law recognizes five categories of statements that are considered defamatory *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication. *Green v. Rogers*, 917 N.E.2d 450, 459 (2009). Categories three and four are at issue in this case.

DeNicolo alleges that Hubbard defamed her when it published the Statements because, according to DeNicolo, Hubbard accused her of lying in her Verified Complaint against Ferguson, or implied as much, by stating that it investigated her allegations and found no evidence to corroborate them. *See* SAC ¶¶ 28–29.

Hubbard argues that the Court should dismiss the SAC because: (1) DeNicolo fails to adequately plead the elements of a claim for defamation *per se*; (2) even if the Statements could be construed to be defamatory *per se*, the Statements are not actionable based on the innocent construction rule; and (3) the Statements are nevertheless non-actionable opinion. R. 14, Memo. Dismiss at 2–3, 5. The Court addresses each argument in turn.

## I.    Whether DeNicolo Adequately Alleges Defamation

Hubbard argues that the Court should dismiss the SAC because DeNicolo fails to allege that Hubbard made any false statement about DeNicolo whose harm is obvious and apparent on its face. Memo. Dismiss at 9 (citing *Bd. of Forensic Document*

*Exam'rs*, 922 F.3d at 831–32). As a preliminary matter, asserts Hubbard, DeNicolo has not adequately alleged which parts of the Statements are false and defamatory, as she is required to do. *Id*. (citing *Green*, 917 N.E.2d at 461). Nevertheless, asserts Hubbard, the Statements do not contain any words that are defamatory *per se*. *Id*. Hubbard posits that the only two possible categories of *per se* defamatory statements that are relevant here, categories three and four: (3) statements that impute a person is unable to perform or lacks integrity in performing his or her employment duties and (4) words that impute a person lacks ability or otherwise prejudices that person in his or her profession. *Id*. at 10. Hubbard contends that the former statements imply some sort of on-the-job malfeasance, whereas the latter statements address suitability for a trade or profession. *Id*. In short, each statement must relate to job performance. *Id*. (citing *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005)). Neither of the Statements, submits Hubbard, falls into either category.

In response, DeNicolo argues that, contrary to Hubbard's suggestion, the Statements fall under categories three and four and therefore are defamatory because Hubbard accused DeNicolo of lying in her Verified Complaint, or "implied as much," by stating that it investigated DeNicolo's allegations and "found no evidence to corroborate" them. Resp. at 6 (citing, among other cases, *Boese v. Paramount Pictures Corp.*, 952 F. Supp. 550, 554 (N.D. Ill. 1996) (calling someone a liar or implying as much might permit defamation recovery); *Pease v. Int'l Union of Operating Engineers Loc. 150*, 567 N.E.2d 614, 619 (Ill. App. Ct. 1991) (the statement, "He lies a lot," constitutes defamation *per se*)). DeNicolo insists that accusing her of lying about her

experience with Ferguson is accusing DeNicolo of doing something bad in the course of carrying out her job. Resp. at 7.

The Court begins with Hubbard's initial argument that DeNicolo has not adequately alleged which parts of the Statements are false and defamatory, as she is required to do. "A claim in federal court for defamation *per se* is held to 'the usual rules for notice pleading established by Rule 8.'" *Maui Jim, Inc., v. SmartBuy Guru Enters*, 386 F. Supp. 3d 926, 941 (N.D. Ill. 2019) (quoting *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003)). That is, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (internal quotation marks omitted). Here, the Court finds that the SAC does so. The Court having dispensed with the preliminary issue, now turns to the substance Hubbard's argument.

It is well settled that, for a statement to fit in category three or four, the statement must be "related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something *bad in the course of carrying out his job*." *Cody*, 409 F.3d at 857 (emphasis in original). In *Cody*, the plaintiff, after being accused of posting offensive content on his employer's website, sued his former employer and supervisor for defamation and interference with contractual relations. *Id.* at 855–56. The district court granted the defendants' motion to dismiss and the Seventh Circuit affirmed. *Id.* The Seventh Circuit found that the defendant's comments did not disparage the plaintiff's skills as a sales manager, but rather were critical of his personal integrity. *Id.* at 858. Nor were the comments

related to plaintiff's work at the defendant-company; instead, observed the court, the statements went to his personal as opposed to professional traits. *Id.* The court noted that sometimes "personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation *per se*," but the court found "no reason to believe that managing the sales department of a radio station requires a degree of integrity above and beyond that required for any job." *Id.* Therefore, plaintiff had failed to plead defamation *per se*. *Id.* That the accusations might have made it more difficult for the plaintiff to find a job did not change the outcome, as the increased difficulty in finding employment would be based on the plaintiff's bad character traits, not because of his perceived inability to do the job. *Id.*

In this case, as stated above, DeNicolo contends that the Statements accused her of lying in her Verified Complaint or implied as much. Resp. at 6. According to DeNicolo, accusing her of lying about her experience as a Hubbard employee is accusing her of doing something bad in the course of carrying out her job. Resp. at 7. DeNicolo highlights that she was not just an assistant producer for the Mix or Hubbard, but specifically for Ferguson; therefore, by accusing DeNicolo of lying about the person she is assisting, Hubbard imputed a lack of ability in the workplace because no other radio show would hire someone who would lie about the star of the show they are producing. *Id.* at 7–8. DeNicolo's position is that the Statements not only accuse her of on-the-job malfeasance but also prejudice her in her trade or profession. *Id.* Not so.

The Court agrees with Hubbard that the Statements have nothing to do with DeNicolo's conduct on the job. Reply at 4. Although the statements address events that occurred while Hubbard was employed at The Mix, they did not address DeNicolo's conduct as an employee or reflect on her job as a radio producer. *Id.* 4–5. Moreover, the Statements concern DeNicolo's allegations about Ferguson made in the Verified Complaint, which were made more than a year after she was no longer employed by Hubbard. SAC ¶¶ 5 (DeNicolo filed the Verified Complaint in May 2021); 6(o) (DeNicolo was terminated from The Mix in May 2020). DeNicolo, as noted by Hubbard, fails to cite any authority for the proposition that a post-employment allegation that does not relate to conduct while an employee is actionable as defamation *per se*. Although the statements in the Verified Complaint pertain to events that occurred while DeNicolo was employed by the Mix, DeNicolo alleges that the Statements accuse her of lying in the Verified Complaint, and the act of filing the Verified Complaint occurred a year after her employment with The Mix ended. In short, the Statements do not address DeNicolo's conduct while she was a Hubbard employee and do not reflect on her ability to do her job in the radio industry and thus do not fall within the third category of actionable defamation *per se*.

Moreover, viewing the allegations in the light most favorable to DeNicolo, as required at the pleading stage, the Court fails to see how the Statements could prejudice Nicolo in her trade or profession. That they may constitute an attack on her personal integrity is debatable, but even if that were the case, the Statements would not be actionable, as there is no allegation that DeNicolo's work in the radio industry

requires certain personal traits, such as trustworthiness, such that an accusation of lacking personal integrity necessarily affects professional abilities. *Pippen*, 734 F.3d. at 613; *Cody*, 409 F.3d at 857. The Court agrees with Hubbard that the cases cited by DeNicolo are distinguishable, as each involved defamatory statements that the plaintiffs lied *in the course of their* employment, thereby imputing to the plaintiffs a lack of integrity in the discharge of their employment duties. *See Boese*, 925 F. Supp. at 552–55 (plaintiff, a forensic chemist who conducted a chemical analysis of debris from a burned-down house, wrote a report indicating an accelerant was used and testified to the same at the arson trial of the homeowner; defendants aired a statement that "everybody lied," which the court found supported plaintiff's defamation *per se* claim because it imputed to plaintiff a lack of integrity in the discharge of his duties as an expert witness for the insurance company); *Powell v. XO Servs., Inc.*, 781 F. Supp. 2d 706, 714 (N.D. Ill. 2011) (defendant made the allegedly defamatory statements that plaintiff engaged in a pattern of lying in a report recommending that plaintiff's employment be terminated; the allegedly defamatory statements were based upon plaintiff authorizing false documents in the course of plaintiff's employment); *Pease*, 567 N.E.2d at 616, 619 (plaintiff, the owner of a construction company, was involved in a dispute with the defendant union over plaintiff's failure to sign a collective bargaining agreement; during the dispute, plaintiff told a reporter that the union was responsible for vandalism at his company, and when interviewed by the same reporter, the president of the union said "He lies a lot," which the court found to be defamatory *per se* because it imputes to the plaintiff

a want of integrity in the discharge of his business); *Swick v. Liautaud*, 662 N.E.2d 1238, 1245 (Ill. 1996) (statement was defamatory *per se* where it accused the plaintiff of "being an industrial spy, lying, stealing and attempting to deceive" his employer's management while he was employed at that company). All in all, the Court finds that the Statements do not fall within category four, either.

The Court finds its conclusions to be supported by an opinion issued in a related case from this District and which Hubbard filed as supplemental authority. *McGurren v. Hubbard Radio Chicago, LLC*, 2022 WL 602467, at *1 (N.D. Ill. Mar. 1, 2022) (*McGurren I*); R. 21-1. *McGurren* involved a similar defamation claim against Hubbard made by another former employee, Melissa McGurren (McGurren). McGurren filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging harassment by Ferguson. *McGurren*, 2022 WL 602467, at *1. After McGurren was no longer employed by Hubbard, England sent an email to Hubbard's employees, stating in relevant part it had investigated the matter and did not agree with McGurren's characterization of events (*McGurren* Statement). *Id.* The court granted Hubbard's motion to dismiss, finding that the *McGurren* Statement did not fall into categories three of four of defamation *per se*, as the statement was not related to McGurren's job performance, as it did not comment on her ability as a radio personality nor indicate that she did anything bad in the course of carrying out her job. *Id.* at *2 (citing *Cody*, 409 F.3d at 857). It also found that the *McGurren* Statement, to the extent it could be construed as calling McGurren a liar, was properly construed as a statement regarding McGurren's personal, not

professional integrity. *Id.* (citing *Jaros v. Vill. of Downers Grove*, 180 N.E.3d 125, 143, *reh'g denied* (Ill. App. Ct. Aug. 13, 2020), *appeal denied,* 167 N.E.3d 653 (Ill. 2021), *and cert. denied,* 142 S. Ct. 400 (2021)).

In response to Hubbard's notice of supplemental authority, DeNicolo points out that each defamatory statement must be analyzed on its own accord. R. 23, Resp. to First Suppl. Auth. True, but DeNicolo does not explain how the Statements made about DeNicolo meaningfully differ from the *McGurren* Statement. *See id.* The Court finds no meaningful daylight between the Statements and the *McGurren* Statement. Indeed, the *McGurren* Statement was that Hubbard disagreed with McGurren's characterizations of events relating to Ferguson's alleged harassment made in an EEOC discrimination charge, while the Statements in the instant case are that Hubbard's investigations did not uncover evidence that corroborates DeNicolo's allegations relating to Ferguson's alleged harassment made in the Verified Complaint. For purposes of the determination of whether the Statements are defamatory *per se*, the Court finds that the Statements are similar to the *McGurren* Statement such that the court's analysis in *McGurren* applicable and persuasive. Like the *McGurren* court, the Court finds that the Statements do not fall within any of the categories of defamation *per se*.

While the Court could end its analysis at this point, for the sake of completeness, the Court addresses Hubbard's innocent construction argument as an alternative basis for dismissal of the complaint.

## II.     Innocent Construction

Alternatively, Hubbard posits that even if the Court determines that the Statements are susceptible to a defamatory *per se* construction, the Court should still dismiss the SAC because the Statements are capable of innocent construction. Memo. Dismiss at 12 (citing *Lott*, 556 F.3d at 568). The Court again agrees with Hubbard.

Under Illinois law, a statement is not defamatory *per se* "if it is 'reasonably capable of an innocent construction.'" *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 737 (N.D. Ill. 2020) (quoting *Lott*, 556 F.3d at 568). As the Illinois Supreme Court has explained, the innocent construction rule "requires a court to consider the statement in context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Solaia Tech*, 852 N.E. 2d at 839. "Whether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." *Republic Tobacco Co., v. N. Atl. Trading Co.*, 381 F.3d 717, 727 (7th Cir. 2004) (internal citation omitted). A court, however, should not dismiss a complaint under the innocent construction rule where the likely intended meaning of a statement is defamatory. *Tuite v. Corbitt*, 866 N.E. 2d 114, 127 (Ill. 2006).

Here, DeNicolo interprets the Statements as indicating that she is a liar. While that is one interpretation of the Statements, another interpretation of the Statements is that they reveal Hubbard's position on the legal matter. *See McGurren I*, 2022 WL 602467, at *3. "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016) (internal quotation marks and citation omitted).

Related to the above alternative interpretation of the Statements, Hubbard argues that "there are multiple reasonable constructions of the Statements that do not impute to [DeNicolo] a lack of integrity or lack of ability in performing her job." Memo at 13. The Court agrees.

For example, asserts Hubbard, "it is possible that Hubbard's investigations did not yield evidence corroborating illegal workplace conduct simply because the conduct of which [DeNicolo] principally complained—unwelcome oral sex—occurred nearly twenty years ago, and many years prior to Hubbard's acquisition of The Mix." *Id.* Another possible explanation for the lack of corroborating evidence posited by Hubbard is that "typically sexual acts are carried out in private; thus, one would not expect there to be witnesses who could corroborate the claims." *Id.* Finally, Hubbard suggests that the lack of corroborating evidence may have been because the investigators had not yet completed their search. *Id.*

DeNicolo responds that Hubbard's argument ignores her allegations that Ferguson's harassment continued into 2020 and was "open and notorious at The Mix" and therefore are implausible. Resp. at 10. As to Hubbard's suggestion that the investigators may not have completed the investigation, she counters that the Statements did not say anything about a continuing investigation and referred to the investigations in the past tense. *Id.* at 11. According to DeNicolo, any reading of the Statements other than her interpretation—that the published Statements would inform the public that DeNicolo is lying—is strained and therefore not subject to the

15

innocent construction rule. *Id.* at 8–9 (citing *Madison v. Frazier*, 539 F.3d 646, 653–54 (7th Cir. 2008)).

True, as DeNicolo points out, the innocent construction rule "does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Madison*, 539 F.3d at 654 (internal quotation marks and citation omitted). Hubbard retorts that, although DeNicolo argues that her construction of the Statements is more reasonable, the Court should not engage in a balancing act, but rather determine only whether one reasonable innocent construction is available. Reply at 9–10; *see also Solaia Tech.*, 852 N.E.2d at 839 ("There is no balancing of reasonable constructions.") (internal quotation marks and citation omitted); *Lott*, 556 F.3d at 568.

The Court agrees with Hubbard that *Lott v. Levitt* is instructive. In *Lott*, the plaintiff alleged that by stating in a published book that other scholars tried to "replicate" the plaintiff's research but obtained different results, the defendant suggested that he either faked his data or performed his analysis incompetently, thereby committing defamation *per se*. 556 F.3d at 569. The Seventh Circuit noted that the statement makes no mention of the plaintiff's methodology or what data set he used, and found that the statement was subject to a reasonable innocent interpretation: namely, that it is a critique of the plaintiff's theory rather than an accusation of falsifying data. *Id.* at 570. As in *Lott*, here the Court finds that the Statements could reasonably be interpreted not as calling DeNicolo a liar, but rather stating simply that Hubbard's investigations did not corroborate DeNicolo's claims

about illegal workplace conduct for various reasons other than she lied in the Verified Complaint. The Court therefore finds that the Statements are subject to the innocent construction rule. *See also McGurren I*, 2022 WL 602467, at *3 (the *McGurren* Statements were subject to the innocent construction rule because, [t]aken in context, a reasonable reader would not understand the internal email by England to have been made for the purpose of causing harm to Plaintiff's reputation or lowering her standing in the community, but rather to acknowledge the existence of the EEOC claim, convey to the radio station's employees that the matter is being investigated, and indicate that the radio station does not agree with Plaintiff's interpretation"); *see also* R. 28-1, *McGurren v. Hubbard Radio Chicago*, 21-cv-6287, Dkt. 30 (N.D. Ill. Apr. 20, 2022) (*McGurren II*) (denying McGurren's motion for reconsideration of the application of the innocent construction rule).

The Court having found that the Statements were not defamatory *per se*, and that even if they were, they were subject to innocent construction, need not address Hubbard's final contention that the Statements are also not defamatory because they constitute non-actionable opinion.

### III.    Futility of Amendment

DeNicolo stated in her response that she plans to seek leave to file an amended complaint to allege a violation of the Illinois Libel and Slander Act, 740 ILCS 145/2 (the Act), which provides that "[i]t shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely . . . ." Resp. at 6 n.6. DeNicolo contends that, because her she filed a Verified Complaint alleging

misconduct against Ferguson, by saying in the Statements that two investigations did not uncover corroborating evidence, Hubbard violated the Act by, in effect, stating that DeNicolo swore falsely. R. 26, Sur-Resp. at 1 n.1.

Hubbard argues that amendment would be futile because, since the Act came into effect, no Illinois Supreme Court decision has relied on the statute to support its own category of defamation *per se*, therefore it must fit within the five categories of defamation *per se*, specifically under the subset of commission of a crime (perjury). Reply at 7 & n.4. But even if the Act created a new *per se* category, Hubbard posits that DeNicolo's claim would fail regardless because the Statements do not refer to the Verified Complaint and the Statements are absolutely privileged. *Id.* at 7–8.

The Court agrees with DeNicolo that the Act "enlarged the classifications [of defamation *per se*] by providing that false accusations of fornication, adultery and false swearing are actionable as a matter of law." *McGurren v. Hubbard Radio Chicago, LLC*, 2022 WL 2355923, at *1 (N.D. Ill. June 30, 2022) (*McGurren III*) (quoting *Fried v. Jacobson*, 457 N.E.2d 392, 394 (Ill. 1983)); *see also Levin v. Abramson*, 2020 WL 2494649, at *10 (N.D. Ill. May 13, 2020) ("The contours of this 'false swearing' category are not immediately apparent, but it covers statements regardless of 'whether the words be spoken in conversation of, and concerning a judicial proceeding or not.'") (quoting 740 ILCS 145/2). The Court therefore finds the cases cited by Hubbard in support of its futility argument, none of which address a defamation claim under the Act, to be of limited use.

Even so, the Court finds that it would be futile for the Court to allow DeNicolo to amend her complaint to allege a claim under the Act. As discussed above, *see supra* Section II, the Court find that the Statements are subject to the innocent construction rule. Although DeNicolo argues in her sur-response that an opinion defense cannot be asserted by a defendant in a claim of defamation *per se* under the Act, she makes no argument about the application of the innocent construction rule. *See* Sur-Resp. The Court agrees with the analysis in *McGurren III*, which Hubbard filed as supplemental authority and to which DeNicolo filed a response. *See* R. 31; R. 33. In *McGurren III*, the court reviewed Illinois cases that had either applied or at least considered application of the innocent construction doctrine to a claim under the Act, and determined that the doctrine could be applied and such application was not "incongruous with the intent of the Illinois legislature." 2022 WL 2355923, at *2 (N.D. Ill. June 30, 2022) (citing, among other cases, *Bryson v. News America Publishing, Inc.*, 672 N.E.2d 1207, 1216–1218 (Ill. 1996) (analyzing the application of the innocent construction rule to a claim under the Act, and determining the statement at issue was not subject to the rule); *Doe v. Cath. Diocese of Rockford*, 38 N.E.3d 1239, 1251 (Ill. App. Ct. 2015) (same)). Accordingly, the Court finds that the innocent construction rule can and would apply to any claim DeNicolo would bring under the Act, and as such, amendment would be futile. Therefore, the Court need not consider Hubbard's alternative bases for denying DeNicolo's request to amend—that the Statements are opinion, that they are absolutely privileged, or that they do not refer to the Verified Complaint.

## IV. Motion to Strike

Hubbard filed a motion to strike allegations of the SAC and declarations filed in support thereto as immaterial, impertinent, and scandalous, and as unrelated to DeNicolo's claims. Mot. Strike. Because the Court has granted the motion to dismiss, it need not decide the motion to strike and accordingly terminates the motion as moot.

### Conclusion

For the foregoing reasons, the Court grants Hubbard's Motion to Dismiss [13] and dismisses the Second Amended Complaint. Because the Court finds that amendment would be futile, the dismissal is with prejudice. The Court terminates Hubbard's motion to strike [15] as moot.

Dated: November 28, 2022

United States District Judge
Franklin U. Valderrama